IRA S. ROGERS *vs.* JAMES HOGAN & trustees.

*Contract—construction of. Assignment—effect of.*

A railroad sub-contractor, by his written agreement with the contractor, agreed "to construct and complete all the grading, earth, rock, and masonry for the road-bed of the Somerset railroad, from the third station north of Otis Hill road-crossing, to the Kennebec river;" "that if any work shall be done by said sub-contractor which is not included in this contract, the price and value of said work shall be determined by the chief engineer;" "that the said work, during its progress, shall be subject to the supervision and inspection of said engineer, and shall be made to conform, in every respect, to his satisfaction;" "that with a view of preventing all disputes and misunderstandings, and for the speedy adjustment of such as may occur, the chief engineer shall determine the amount or quantity of the several kinds of work herein contracted

to be done, and shall decide every question which can or may arise relating to the execution of work under this contract, on the part of the sub-contractor, and his decision shall be final." The sub-contractor did work on the foundation of the bridge across the Kennebec river, which was accepted and its value estimated by the chief engineer. *Held*, that the work on the bridge foundation was done under the contract.

And an assignment of such a contract by the sub-contractor, and "all the rights and privileges therein mentioned," except the ten per cent due "on all earth, excavations of earth, and masonry and stone delivered on the road to the first of March," carries the value of the work on the foundation of the bridge as estimated by the chief engineer.

ON EXCEPTIONS.

Trustee process against James Hogan, as principal defendant, and S. S. Thompson and J. G. Larry, alleged trustees of Hogan.

Thompson disclosed, substantially,

That on the 23d of September, 1868, he entered into a written contract with the Somerset Railroad Company, to build their road from West Waterville to Carratunk Falls, and took J. G. Larry in as a partner in the contract between Norridgewock bridge and West Waterville; that on the 25th of the following November, the principal defendant entered into a written contract with Thompson and Larry, "to construct and complete all the grading, including earth, rock, and masonry, for the road-bed of the Somerset railroad from the third station north of Otis Hill road-crossing to the Kennebec river, or if the line is changed, as far north as the present river crossing," at the prices specified in the contract; that Hogan continued to work under the contract until April, 1869, when he assigned the contract, and "all the rights and privileges therein mentioned, except the ten per cent due him on all earth, excavations of earth, and masonry and stone delivered on the road to the first of March," to Thomas Hogan and Stephen Mills, who continued the work under the contract until the time of the service of the writ upon the trustees; that at the time of the service of the writ on them, the trustees had paid the principal defendant all he had earned under the contract, except the ten per cent reserved by the contract, and about two hundred dollars balance due for extra work done by him upon the bridge foundation, and accepted and

estimated by the chief engineer; that Hogan and Mills claim the unpaid balance by reason of the assignment to them; that the work contracted to be done by the principal defendant is not completed; that the work done on the bridge foundation was allowed by the railroad company as extra work.

No paper in the case indicates the date of writ or service, but it was served after the assignment.

The presiding judge charge the trustees, and they alleged exceptions.

*J. H. Webster*, for the trustees.

*S. D. Lindsey*, for the plaintiff.

APPLETON, C. J. On the 25th November, 1868, S. S. Thompson and J. G. Larry, the alleged trustees, entered into a contract with James Hogan, the principal defendant, to do certain specified work upon the Somerset railroad. After describing the work to be done, as it was obvious that there might be extra work not embraced in the specifications, but which would be indispensable in the construction of the railroad, the following provisions were inserted in the contract:

" Eighthly. It is also agreed that if any work shall be done by said sub-contractor (Hogan) which is not included in this contract, the price and value of said work shall be determined by the chief engineer. And it is likewise agreed that the work, during its progress, shall be subject to the supervision and inspection of said engineer, and shall be made to conform, in every respect, to his direction; and all bad or imperfect work to be immediately remedied, and the same rendered good and substantial to the satisfaction of said engineer. All measurements herein and in the specifications mentioned or referred to, are understood to mean English measure.

" Ninthly. And it is further mutually agreed, with a view to the preventing all disputes and misunderstandings, and for the speedy adjustment of such as may occur, that the chief engineer shall

determine the amount and quantity of the several kinds of work herein contracted to be done, and shall decide every question which can or may arise relating to the execution of the work under this contract, on the part of said sub-contractor, and his decision shall be final and conclusive."

It is admitted that the defendant did work on the bridge foundation for the Norridgewock bridge, which was accepted and the value of which was estimated by the chief engineer.

The question presented is whether this work is to be deemed work done under the contract, and we think it is.

The contract embraces, and was intended to embrace, work done under the specification therein set forth, and any and all work on the road not specially described in the contract. All work done under the eighth article of the contract is equally under the contract, as that more particularly described. This article assumes that the specifications do not embrace all the work that will be required for the completion of the road. It provides that the " price and value " of " any work which is not included in the contract," that is, in that portion of it which precedes this article, shall be determined by the chief engineer. It gives him the power of supervision, inspection, and direction. If the work is badly or imperfectly done, its badness and imperfection are to be immediately remedied, and it is to be rendered good and substantial to his satisfaction. His decision is to be final and conclusive. All these provisions refer to " any work " which had not been previously described, and it brings such work within the contract, and subject to the decision of the chief engineer. If, then, the work or the bridge foundation had been so " bad and imperfect " as to be valueless, and the engineer had so decided, his decision would, by the very terms of the agreement, have been conclusive, and the contractor would have had no right to recover. This is the necessary result of the contract. It follows, therefore, that this work would be work under the contract. That the contracting parties so understood it is shown by the acts of the chief engineer in accepting and estimating the value of the work, which it was no business of his to do unless by virtue of article eighth.

On the 21st April, 1869, the defendant, James Hogan, assigned his contract and all "the rights and privileges therein mentioned," except the ten per cent due "on all earth, excavations of earth, and masonry and stone delivered on the road, to the first of March, to Thomas Hogan and Stephen Mills." This assignment was before the service of the trustee writ. The alleged trustees had notice of the same. The validity of this assignment is not questioned. It embraced all save what was specially excepted. But the exception does not refer to the work on the bridge foundation, nor is it contended that it does. For that work, according to the estimate of the chief engineer, the trustees are liable to the assignees of the defendant.                                 *Exceptions sustained.*

*Trustees discharged.*

Cutting, Kent, Walton, Barrows, and Danforth, JJ., concurred.